## Hatch *vs.* Taylor.

A party who deals with an agent has a right to know the extent and limitations of his authority to act for his principal.

Where private instructions are given to a special agent, respecting the mode and manner of executing his agency, intended to be kept secret, and not communicated to those with whom he may deal, such instructions are not to be regarded as limitations upon his authority; and notwithstanding he may disregard them, his act, if otherwise within the scope of his agency, will be valid, and bind his employer.

Where one assumes to act for another without authority, and makes a contract disposing of his property, if the latter, with a knowledge of what has been done, ratifies the contract, it will bind him. And a ratification may be shown from his acts, notwithstanding he expressly declared he would not sanction it.

Thus if a person assuming to act as agent of another, exchanges a horse, belonging to the latter, for another horse; and the owner refuses to sanction the contract, but before reclaiming his horse participates in a purchase of the horse received in exchange, from the party who has thus obtained the possession of him, this will amount to a ratification.

Trespass, for taking a horse of the plaintiff, on the 5th of March, 1836.

Hatch *v.* Taylor.

On the trial it appeared that the defendant, in February, 1836, was the owner of two horses, one black, the other white, usually worked together; and that they were hired by one Asa Clark, for the purpose of drawing a load of goods from Lowell, in Massachusetts, to Thornton, in this state.

While Clark had the horses in Thornton, he exchanged one of them, with the plaintiff, for a mare and colt; the plaintiff supposing that the horses belonged to Clark. The mare died at Concord, while Clark was on his return to Lowell. The other horse, with the colt, was taken by Clark to the defendant, in Methuen, and Clark informed the defendant of the trade. The defendant refused to sanction it, and told Clark to take the colt away. Clark soon afterwards took the colt to Derry; one Emerson, who was present in Thornton when Clark exchanged for the colt, and the defendant, being with him; and Emerson there purchased the colt of Clark, the defendant being present, and making no objection, but furnishing Emerson, who was poor, with money to pay for him. After this purchase the defendant proceeded, with Emerson, to Kingston, where Emerson exchanged the colt with one Orrin Spofford, for a mare, the defendant furnishing money to pay the difference. Emerson sold the mare on the next day to the defendant. Immediately after this the defendant went to Thornton, and took the horse in question from the possession of the plaintiff, denying the right of Clark to make any such exchange.

There was evidence, on the part of the plaintiff, tending to show that Clark, when he left Lowell, was empowered by the defendant to sell or exchange this horse. This evidence was derived principally from the declarations of the defendant, subsequent to the time of the exchange, and was somewhat contradictory in stating what he had told Clark he might do respecting a sale or exchange of the horses; in some instances denying that Clark had any liberty to trade away the horses; in others, admitting that he said to Clark he might sell, if he had a chance to sell both; and in another

stating that he told him he did not intend to have one of the horses put away without the other, and not to put the horses away unless he put off both. One witness stated that the defendant, when he took the horse in question from the plaintiff, in Thornton, said Clark had no business to trade—that he told him not to part the span—that he told him if he could put them away, and get a good five year old horse and boot enough, he might—instead of which he had got a little shark of a colt, and a mare he had not seen, Clark having left her at Concord, on his way down.

The defendant offered evidence tending to show that he never gave Clark any authority to dispose of the horses; or, that if he had any authority, it was a permission to sell them if he could get a good price, and could sell both, but not to sell either alone; and he contended that if Clark was empowered to sell, that would not authorize him to exchange; and further, that if Clark was authorized to sell, or exchange, on condition that he should sell or exchange both, and not otherwise, his act in disposing of one was void, because not in pursuance of his authority.

The plaintiff contended, that there was sufficient evidence that Clark was authorized to make the exchange; and further, that the purchase of the colt, by Emerson, was a pretence, being for the benefit of the defendant; and that what was thus done was a ratification, by the defendant, of the act of Clark in making the exchange.

The court instructed the jury, that when an authority is given to an agent to make a sale, it must be strictly pursued, in order to bind the principal—that an authority to sell would not authorize the agent to barter, or exchange, and if he undertook to do so his act would be void; but that there was a distinction between an authority to act for the principal, and instructions as to the mode of executing the authority; and that if, in this case, Clark had authority to sell or exchange both horses, coupled with directions to dispose of both or neither, and he disobeyed the instructions in this

Hatch *v.* Taylor.

particular, and exchanged one without the other, that was a matter between him and his principal, and the principal would be bound by his act.

The court further directed the jury, that if Clark had no previous authority to make the exchange, the defendant might ratify it afterwards, and such ratification would bind him—that his standing by and seeing Clark sell the colt, without taking any part, and making no objection, would not amount to such ratification; but that if he had any agency whatever in the sale of the colt by Clark to Emerson, or afterwards in the exchange of him by Emerson with Spofford, that would amount to a ratification of the contract between Clark and the plaintiff, and bind the defendant—that it would be a fraud, in the defendant, to assist in disposing of the colt, and then claim the horse—that it was quite enough that he might be permitted to look on and see Clark sell the colt, without interfering to prevent him—that if he went beyond this, and took any active agency in disposing of him, he was then bound by the exchange which Clark had made; and that, in such case, whether Clark had any previous authority or not, the plaintiff was entitled to recover.

The jury having returned a verdict for the plaintiff, the defendant excepted to the foregoing instructions, and moved for a new trial.

*Bell & Quincy*, for the plaintiff, admitted that there was a distinction between instructions and authority, but contended it was not applicable to this case.

A special agent can bind his principal only by strictly pursuing his authority. *Long on Sales* 223 ; 3 *D. & E.* 760, *Fenn* vs. *Harrison ;* 1 *Livermore on Agency*, 103, 107 ; *Paley on Agency* 150.

The authority of Clark was special—to sell both or neither. Where the appointment is special, if the agent deviates from his private instructions the principal is not bound. *Story on Agency* 116, 121.

The defendant refused to ratify the exchange made by Clark with the plaintiff. The acts done by him were not in aid of Clark in making the sale of the colt to Emerson, but were in aid of Emerson in making the purchase.

If the defendant had done an act disposing of the colt, that would have been an affirmance.

*Bartlett & Rogers*, for the plaintiff, to the first point cited *Story on Agency* 118, *note ;* 15 *East* 408, *Whitehead* vs. *Tuckett.*

To the point that the acts of the defendant amounted to a ratification, *Story on Agency* 247 ; *Livermore on Agency* 164 ; *Paley on Agency* 171 ; 1 *Pick. R.* 372.

PARKER, C. J. It cannot be known, from the case before us, whether the jury found that Clark did not exceed his authority in making the exchange ; or whether the verdict was based upon a ratification of the transaction, by the acts of the defendant afterwards. If, therefore, the instructions to the jury were not substantially correct upon either of these points, there must be a new trial.

There was sufficient evidence to warrant a finding that Clark, when he received the horses from the defendant, had an authority, of some description, given him respecting a sale or exchange of one or both of them. What this authority was, whether to sell or exchange, and what were the limitations upon it, or the instructions of the defendant relative to the manner of its execution, did not very clearly appear ; the authority itself having been conferred verbally, and the evidence establishing its existence, and what was said about it, being derived mainly from the subsequent, and in some instances contradictory, declarations of the defendant himself.

The instructions to the jury take a distinction between the authority given to an agent, which he is not only bound to pursue, in duty to his principal, but a deviation from which will render his act void, (unless he has been held out, or en-

abled to hold himself out, as having a different authority) and the instructions or directions which he may receive from his principal, relative to the manner in which he is to execute his authority, which are matters between the principal and agent, so that a disregard of them, by the latter, although it may make him liable to the principal, will not vitiate the act, if it be done within the scope of the authority itself.

It is very apparent that such a distinction must exist in some cases of agency, the particular instructions from the principal, relative to the circumstances under which the agent is to act, being intended as directions for his guidance, but not operating as limitations upon the authority which is conferred. Thus in case of a general agent, authorized to transact all business of a particular kind, although he can bind his employer only by acts within the scope of his authority, yet that authority is distinct from private orders or instructions relative to the mode in which it is to be executed ; and the latter cannot limit or impair the authority, or affect the rights of a party dealing with the agent, unless he had knowledge of such private instructions. The books so uniformly concur in establishing this principle, that it is unnecessary to cite authorities in support of it. Strangers cannot look to the private communications that may pass between a principal and his agent. 15 *East* 43, 408 ; 5 *Bing.* 442, (*E. C. L. R.* 500.)

But whatever was the extent of Clark's authority in the present case, he was not a general, but a special, agent, authorized to make a sale, or exchange, of one or two horses only ; and the question arises how far the same rule is applicable to agencies of that character.

To a very considerable extent, the principles applicable to general agencies apply also to those of a special and limited character. Thus the general principle, that the acts of the agent, within the scope of his authority, bind his employer ; and that his acts beyond that point are void, unless the principal has held him out, or enabled him to hold himself out,

as having more enlarged powers than he actually possessed, or unless the employer ratifies his acts, is applicable to all classes of agencies.

It is contended, however, that the distinction between authority and instructions does not apply in cases of special agents; and the defendant's counsel rely particularly upon a treatise on Agency, recently published, which, it must be admitted, in some measure sustains their position.— Speaking of the nature and extent of the authority of agents, the author refers to " the distinction commonly taken between the case of a general agent, and that of a special agent; the former being appointed to act in his principal's affairs generally, and the latter to act concerning some particular object;" and says : " In the former case the principal will be bound by the acts of his agent within the scope of the general authority conferred on him, although he violates by those acts his private instructions and directions, which are given to him by the principal, limiting, qualifying, suspending or prohibiting the exercise of such authority under particular circumstances. In the latter case, if the agent exceeds his special and limited authority conferred on him, the principal is not bound by his acts ; but they become mere nullities, so far as he is concerned ; unless, indeed, he has held him out as possessing a more enlarged authority." *Story on Agency* 115. The phraseology of this last clause is similar in substance to that of other elementary writers. 2 *Kent's Com., Lecture* 41; 1 *Livermore on Agency* 108. Taken strictly, as it stands, there can be no doubt of the correctness of the rule. If a special agent exceed his special and limited authority, without doubt the principal is not bound by his acts, unless he has held him out, or enabled him to hold himself out, as possessing a more enlarged authority. But from its connection with the preceding clause, and from its general connection with the context, this clause is understood as asserting that if a special agent exceeds the special and limited private instructions or directions which are given him

Hatch *v.* Taylor.

by the principal, limiting or qualifying, suspending or prohibiting the exercise of his agency under particular circumstances, the principal will not be bound, unless he has held the agent out as possessing a more enlarged authority than the right to act, coupled with the instructions, would give him. In other words, that instructions or directions to a special agent, notwithstanding they are private or secret, if intended to operate upon, and limit, qualify, suspend or prohibit the action of the agent under certain circumstances, become part and parcel, and of the essence of the authority itself, so that the agent will not be acting within the scope of his authority, or apparent authority, if he disregard them. So it seems to be understood by the defendant's counsel; and upon a subsequent page it is stated, that if a common person, not a factor, should be employed to make a sale, "and he should violate his private instructions, and deviate from his authority in the sale, the principal would not be bound." *Story on Agency* 122.

If this is so, there can be, ordinarily, no such thing as instructions, contra-distinguished from authority, in the case of a special agent; as, whatever directions he receives respecting the mode and manner in which he is to perform his duties, will partake of the nature of authority, or qualification of authority, and limit or suspend his right to act, and to bind the principal, unless there has been some holding out of the agent as having an authority beyond the import of such directions.

But it is, we think, apparent enough, that all which may be said to a special agent, about the mode in which his agency is to be executed, even if said at the time that the authority is conferred, or the agency constituted, cannot be regarded as part of the authority itself, or as a qualification or limitation upon it. There may be, at all times, upon the constitution of a special agency, and there often is, not only an authority given to the agent, in virtue of which he is to do the act proposed, but also certain communications, addressed to the

private ear of the agent, although they relate to the manner in which the authority is to be executed, and are intended as a guide to direct its execution. These communications may, to a certain extent, be intended to limit the action of the agent; that is, the principal intends and expects that they shall be regarded and adhered to, in the execution of the agency; and should the agent depart from them he would violate the instructions given him by the principal, at the time when he was constituted agent, and execute the act he was expected to perform in a case in which the principal did not intend that it should be done. And yet, in such case he may have acted entirely within the scope of the authority given him, and the principal be bound by his acts. This could not be so, if those communications were limitations upon the authority of the agent. It is only because they are not to be regarded as part of the authority given, or a limitation upon that authority, that the act of the agent is valid, although done in violation of them; and the matter depends upon the character of the communications thus made by the principal, and disregarded by the agent. Thus where one person employs another to sell a horse, and instructs him to sell him for $100, if no more can be obtained, but to get the best price he can, and not to sell him for less than that sum, and not to state how low he is authorized to sell, because that will prevent him from obtaining more. Such a private instruction can with no propriety be deemed a limitation upon his authority to sell; because it is a secret matter between the principal and agent, which any person proposing to purchase is not to know, at least until the bargain is completed. And if no special injunction of secrecy was made, the result would be the same; for from the nature of the case such an instruction, so far as is regards the *minimum* price, must be intended as a private matter between the principal and agent, not to be communicated to the persons to whom he proposed to make a sale, from its obvious tendency to defeat the attempt to obtain a greater sum, which was the spe-

cial duty of the agent. It will not do to say that the agent was not authorized to sell, unless he could obtain that price. That is the very question, whether such a private instruction limits the authority to sell.

It seems very clear that any one who proposes to deal with a special agent has the right, in the first place, to know what authority he possesses, and all the limitations upon it. He deals with him at his peril, because he is bound to enquire into the nature and extent of the authority conferred. 9 *Pick. R.* 542, *Snow* vs. *Perry* ; 1 *Peters' S. C. R.* 264, *Schimmelpennick* vs. *Bayard; Story on Agency 124.*

The principal is not to be bound by the acts of the special agent beyond what he has authorized, because he has not misled the confidence of the party dealing with him, or enabled the agent to practice any deception ; has never held the agent out as having any general authority whatever in the premises ; and if the other party trusts without enquiry, he trusts to the good faith of the agent, and not to that of the principal. *Story* 125.

But to what purpose is the party dealing with the agent to enquire, respecting that which he is not to know, and what duty exists upon him to know that, which by the express direction of the principal, or from the nature of the case, is to be concealed from him ? Or how can it be said that he trusts the agent, respecting the limit at which he is authorized to sell, or purchase, when if he asks respecting that limit, the principal has precluded him from ascertaining what it is ? Who, in fact, places confidence in the agent in a case like that above stated, and who has enabled the agent to practice deception, if deception takes place ?

So far as a party dealing with a special agent is bound to enquire respecting his authority, so far he is entitled to a definite and distinct answer. And so far as he is bound to enquire and to know, it is bad faith and fraud to conceal any thing from him. But would it be deemed bad faith in the agent to say nothing as to the price at which he was instructed

to sell, if the market would afford him no better? It may very safely be asserted that this is not usually practised, either by general or special agents; and a great change in the ordinary mode of dealing must take place before the morality of contracts could be considered as requiring such a disclosure. It would certainly not be required of the owner of property, in making a sale, to state what was the lowest price he had determined to receive, if the party proposing to purchase would give no more; and it is as little expected of an agent, who is employed to get the best price he can obtain, but directed not to sell for less than a certain sum.

So in the case of a person employed to purchase, if the employment be to purchase an article at the best possible price, with private directions that he may give a certain sum, but no more. The permission to give this sum, and the direction not to exceed it, are not ordinarily to be communicated to those with whom he negotiates for a purchase, although intended to control the action of the agent himself. The employer trusts the agent.

No man is at liberty to send another into the market, to buy or sell for him, as his agent, with secret instructions as to the manner in which he shall execute his agency, which are not to be communicated to those with whom he is to deal; and then, when his agent has deviated from those instructions, to say that he was a special agent—that the instructions were limitations upon his authority—and that those with whom he dealt, in the matter of his agency, acted at their peril, because they were bound to enquire, where enquiry would have been fruitless, and to ascertain that, of which they were not to have knowledge. It would render dealing with a special agent a matter of great hazard. If the principal deemed the bargain a good one, the secret orders would continue sealed; but if his opinion was otherwise, the injunction of secrecy would be removed, and the transaction avoided, leaving the party to such remedy as he might enforce against the agent.

From this reasoning we deduce the general principle, that

where private instructions are given to a special agent, respecting the mode and manner of executing his agency, intended to be kept secret, and not communicated to those with whom he may deal, such instructions are not to be regarded as limitations upon his authority ; and notwithstanding he disregards them, his act, if otherwise within the scope of his agency, will be valid, and bind his employer.

It is unnecessary to multiply instances in which the principle is applicable. It may be added, that instructions which are not to be communicated to the other party are, justly, no more to be regarded as limitations upon the authority of the agent, than instructions not to sell unless the agent can obtain a good price, or not to purchase without he can obtain the property cheap ; or, as stated by some of the evidence in this case, not to exchange " unless he could get a good five year old horse, and boot enough ;" in which cases the instruction is not a limitation upon the authority, and the transaction to be held void unless the principal, or a jury, should consider that the agent had complied with the direction. The principal in such cases trusts the agent, who has a discretion in the matter, (4 *Esp. R.* 114, *Hicks* vs. *Hankin,*) and it would be most mischievous to hold such direction as a condition, upon a compliance with which depended the validity of the act.

It may be otherwise if the principal directs his agent to offer his horse for sale at the sum of $100, and to take no less ; or to purchase ten bales of cotton, if to be had at a certain sum, and to give no more ; for in those cases the whole matter would be open to the knowledge of any one proposing to purchase, or sell, and the direction may stand as part and parcel of, and a limitation upon, the authority itself.

The view we have thus taken is strongly supported by the doctrine in relation to agencies, where there is a written authority. Mr. Justice Story, in another part of his work, speaking of agencies of that description, says—" We are, however, carefully to distinguish, in all such cases, between the authority given to the agent, and the private instructions

given to him as to his mode of executing that authority. For, although where a written authority is known to exist, or is, by the very nature of the transaction, presupposed, it is the duty of persons dealing with the agent to make enquiries as to the nature and extent of such authority, and to examine it ; yet no such duty exists to make enquiries, as to any private letter of instructions from the principal to the agent ; for such instructions may well be presumed to be of a secret and confidential nature, and not intended to be divulged to third persons. Indeed, it may, perhaps, be doubted, if upon this subject there is any solid distinction between the case of a special authority to do a particular act, and a general authority to do all acts in a particular business. Each includes the usual and appropriate means to accomplish the end. In each case the party ought equally to be bound by the acts of his agent, executing such authority by any of those means, although he may have given to the agent separate, private, and secret instructions of a more limited nature." *Story on Agency* 70. But he adds, in a note, " The case intended to be put in the text, is that of an authority distinct, and not derived from, the instructions ; for, if the original authority is restricted and qualified, the restrictions and qualifications constitute a part of the power itself, and govern its extent."

It is undoubtedly true that " if the original authority is restricted and qualified, the restrictions and qualifications constitute a part of the power itself, and govern its extent." But the question is, when is it so restricted and qualified ; and it is not easy to distinguish the difference, in principle, between a written authority, with a private letter of instructions of a secret and confidential nature, and not intended to be divulged ; and a verbal authority, with verbal instructions of a secret and confidential nature, which also are not intended to be divulged.

There is another view of the case which, perhaps, ought not to be omitted, leading to the result at which we have already arrived. In the case of general agents, the principal

Hatch v. Taylor.

will be bound by the acts of his agent, within the scope of the general authority conferred upon him, although he violates, by these acts, his private instructions and directions. He is acting within the scope of his authority, or apparent authority. So a special agent, who has private instructions for his government, but which are not to be communicated to those dealing with him, is acting within the scope of his authority, or apparent authority, when he is acting within the scope of what he is to communicate, and what only the party dealing with him is authorized to know, or is to know if he enquires.

In fact, there seems to be, in such case, a holding out of the agent, or an authorization to him to hold himself out, as having an authority beyond the private instructions intended to limit his action upon the subject matter ; and upon that principle the employer should be bound. " The principle which pervades all cases of agency, whether it be a general or special agency, is this : The principal is bound by all acts of his agent within the scope of the authority which he holds him out to the world to possess ; although he may have given him more limited private instructions unknown to the persons dealing with him." *Story* 118, *note.* " For I am bound by the contracts which my agent makes in my name, if they do not exceed the power with which he was ostensibly invested ; and it will not avail me to shew that I have given him secret instructions to the contrary, which he has not pursued." 1 *Livermore on Agency* 107. When the principal sends his agent into the market with directions to sell for him ten bales of cotton, or a horse, and says to him that he may sell for a certain sum, if he cannot obtain more, but not to sell for less than that, and to get as much more as he can, he has not only enabled, but directed, the agent to hold himself out as having authority to sell. That matter is to be communicated to any one to whom he proposes to make a sale ; and he is acting within the scope of the authority, which he is thus held out as possessing, when he makes the sale, notwithstanding

he may disregard the secret limit upon the price which he was directed to require.

It is believed there is little, in the cases, conflicting with the views now expressed. In some of them there is a mere statement of the general principle, that if a special agent exceed his authority, his act is void. In others, the instruction was not private, or there was a clear excess of authority. 2 *Kent's Com.* 484, *Lec.* 41; 13 *Wend. R.* 520, *Jeffrey* vs. *Bigelow;* 8 *Wend. R.* 494, *Rossiter* vs. *Rossiter;* 15 *Johns. R.* 54, *Munn* vs. *The Commission Co.;* 6 *Cowen's R.* 357, *Andrews* vs. *Kneeland;* 1 *Peters' S. C. R.* 264; 9 *Pick. R.* 542; 3 *Johns. Ch. R.* 344, *Denning* vs. *Smith;* 3 *D. & E.* 760, *Fenn* vs. *Harrison;* 1 *Esp. R.* 112, *East India Co.* vs. *Hensley;* 3 *Esp. R.* 65, *Runquist* vs. *Ditchell;* 2 *Johns. R.* 48, *Batty* vs. *Carswell;* 7 *Johns. R.* 390, *Gibson* vs. *Colt;* 18 *Johns. R.* 363, *Beals* vs. *Allen;* 3 *Conn. R.* 183, *Thompson* vs. *Stewart. Sed vide,* 11 *Wend. R.* 90; 15 *East* 467.

In the present case, there was some contradiction in the evidence, whether any authority was given to Clark; or, if any was given, what it was. It became necessary, of course, to submit a question upon that to the jury. And from the uncertainty respecting what was said by the defendant, and how it was said, it was also left to the jury to find, in case an authority was given, how far it extended, and whether what was said about not parting with one horse unless both were disposed of, was said in a way to be a limitation upon the authority, or as mere instructions and directions. It does not seem to have appeared, distinctly, whether what was said about disposing of one only, if any thing of that kind was in fact said, was a private direction to Clark, or was in fact incorporated into, and part of, the authority itself. If Clark had an authority to exchange, and the defendant told him, as he himself afterwards stated, " not to part the span," but " if he could put them away, and get a good five year old horse, and boot enough, he might," this declaration, so far as it re-

Hatch *v.* Taylor.

lates to a good horse, and boot enough, cannot be held to be a limitation on the authority ; and if this is regarded as instructions, what was said, in connection with it, about parting the span, might well partake of the same character. The principle now settled, that whatever is not to be communicated to the person with whom the agent may deal, is not to be regarded as a limitation upon his authority, was not adverted to. But no objection is taken that the matter was not properly submitted to the jury, on the evidence before them, if there may be instructions to a special agent, given at the same time with the authority, which are not limitations upon his authority to execute the agency, but private directions, intended to limit his action in the matter, and a disobedience of which may make him liable to his principal, but will not avoid the act done. It is apparent, that in some cases the evidence may be of such a character that it must be submitted to a jury to determine, in effect, how far the authority, so called, extended, by finding what in fact was said by the principal, and what was intended as mere private instructions to the agent ; and this seems of that description. On the view we have taken, therefore, there is nothing in the instructions upon this point, on which to set aside the verdict.

The instructions to the jury respecting a ratification were fully warranted by the evidence reported. That evidence is quite sufficient to authorize a belief that when the colt was sold, and the defendant furnished the money to make the payment to Clark, and when he was afterwards exchanged, by Emerson, with Spofford, for the mare, and he furnished the money to pay the difference, Clark and Emerson were puppets in his hands, moving as he pulled the wires. Emerson was poor, and the mare was immediately sold, as it was called, to the defendant. Upon this part of the case the jury ought to have found for the plaintiff, if there had been no evidence of any previous authority in Clark to make the exchange. 1 *Livermore on Agency* 45 ; 1 *Caines' R.* 526, *Cod-*

*wise* vs. *Hacker;* 2 *Salk.* 442, *Ward* vs. *Evans ; Story on Agency* 247, *and auth. cited.* Having been active in the sale of the colt, the defendant's declaration that he would not sanction the trade, cannot avail him. 1 *Livermore* 395; 1 *Ves. sen.* 509, *Cornwall* vs. *Wilson.*

*Judgment on the verdict.*