# CARROLL,

## DECEMBER TERM, A. D. 1843.

---

## BROWN *vs.* BERRY & a.

A contract to deliver certain articles at a specified time and place, is discharged, if the contractor be then and there in readiness to deliver such articles as he had undertaken so to deliver.

But if the articles which he stands ready to deliver are not of the quality specified in the contract, his presence and readiness will not avail him, and his contract is broken, even if the other party do not attend at the time specified for the delivery.

A memorandum, written by the purchaser upon such a contract, requested W. to take charge of such articles, if delivered, and was forwarded with the contract to W.;—*Held*, that W. was an agent with authority to exercise his judgment as to the quality of the articles, and if he saw fit, to receive the same in discharge of the contract.

But he had no authority to receive them in payment on any subsequent day.

And if he should assume to so receive them, the principal is not affected thereby, but may bring his action for breach of the contract, without either returning the articles delivered, or giving any notice to the contracting party.

ASSUMPSIT, upon the following contract signed by the defendants : " For value rec'd, we jointly & severally promise to pay John Brown or order forty dollars, to be paid in wool skins at sixty-seven cents each. Said skins are to be delivered at John Clark's Inn, in Dover, on the 6th day of December instant, and are to be worth as much each as the skins which the said Brown purchased of Samuel Quarles this day, & are now in the store of said Brown, being the same skins that I examined in said store. December 3, 1841."

The writ was dated December 8th, 1841.

It was proved that before the note became due, the plaintiff sent it to Samuel L. Wiggin & Co., of Dover, with the

following directions written upon the bottom of said note and signed by the plaintiff, viz: "Mr. Wiggin, Should Mr. Berry deliver the above skins, you will please take charge of them for me, and I will satisfy you for your trouble." No other instructions were given to said firm except what is contained in said memorandum. This memorandum was addressed at its foot to "Samuel L. Wiggin & Co."

December 6th, 1841, the clerk of Berry went to Clark's Inn, and there had sixty wool skins. He was directed by Berry to satisfy the plaintiff at all events, either by the skins he should have with him, or by others, or by money. No person appeared on that day to receive the skins. On the following day, one of the firm of Wiggin & Co. showed the note to the clerk of Berry, and went with him to Clark's and counted the skins. Finding there were sixty in number, and knowing nothing of the quality of the skins referred to in the note, he gave up the note to Berry's clerk, and had the skins stored at Clark's for the plaintiff, where they now remain.

It was farther proved that the skins referred to in the note were of fair size and good quality, from sheep killed the first of December, and were worth seventy-five cents each. That the skins received by Wiggin were from sheep killed in the summer; some of them were very small, and they were not worth more than fifty cents each.

The defendants objected that no notice had been given them by the plaintiff that he would not receive the skins.

Upon the foregoing evidence, a verdict was taken by consent for the plaintiff, for the value of the skins at the time and place of delivery, and interest from the time the note fell due, on which judgment is to be rendered, or it is to be set aside and a verdict entered for the defendants, according to the opinion of this court.

*Hobbs*, for defendants. I. Wiggin was a *special* agent of the plaintiff, with *unlimited authority* to receive the skins.

Brown *v.* Berry.

As to the manner in which such authority will be construed, see *Paley on Agency* 159 ; *Story on Agency* 73, 87 ; *Ditto* 77, 118, (*n.* 1.) An agent to procure a discount may indorse the paper, and an agent to sell a horse may warrant, unless restricted. *Story on Agency* 59 *to* 91 ; *Paley* 161 ; 3 *T. R.* 756, *Fenn* vs. *Harrison & a. ;* 4 *T. R.* 177, *S. C. ;* 3 *Esq. N. P.* 64, *Runquist* vs. *Ditchell.* The agency in this case was *to receive* the skins, and he was not limited as to the time. This is commercial usage. No distinction can be made between an agency to receive money or to receive specific articles. Were there any doubt on this point, the question should be left to a jury.

The defendants' agent, having had the skins at the place of delivery on the day they fell due, and the plaintiff's agent, on the next day, presenting the memorandum with the only instructions he had which contained no limit as to time, the defendants' agent was warranted in delivering the skins. *Paley* 211 ; 1 *B. & P. N. R.* 101, *Owen* vs. *Barrow.*

II. The instructions to the plaintiff's agent were, to receive skins worth sixty-seven cents each. Those received were not worth more than fifty cents. But the case finds, in effect, that they intended to deliver such as were required, and to fully pay the note. It was a mutual mistake, from which not even equity would relieve. 1 *Story's Eq.* 159. The plaintiff trusted to his agent's discretion, and is bound by it. *Story's Agency* 118, (*n.* 1,) 124, (*n.* 1) ; *Paley* 32. The authority of a cashier will illustrate this. *Story's Agency* 105 ; 1 *Binney* 27, *Levy* vs. *Bank of U. S. ;* 4 *Dallas* 234, *S. C. ;* 10 *Wheat.* 333, *Bank of U. S.* vs. *Bank of Georgia ;* 17 *Mass.* 1, *Salem Bank* vs. *Gloucester Bank ;* 17 *Mass.* 33, *Gloucester Bank* vs. *Salem Bank.*

III. The defendants, having parted with their property, and received the memorandum, and the plaintiff, by his agent, having received and retained the property, and delivered up the memorandum, this question arises ; what, under the circumstances of the case, are the rights of the plaintiff, at

law ? Probably the true rule is stated in *Markle* vs. *Hat-field*, 2 *Johns. R.* 455, by Ch. J. *Kent.* See, also, 1 *T. R.* 225, *Alexander* vs. *Owen;* 9 *N. H. Rep.* 365, *Fogg* vs. *Sawyer.* The defendants should have been placed *in statu quo.* 5 *East* 449, *Hunt* vs. *Silk.* The plaintiff should at least have given notice. 4 *Mass.* 502, *Kimball* vs. *Cunningham;* 15 *Mass.* 319, *Conner* vs. *Henderson.*

*Bartlett*, on the same side, cited *Story's Agency* 115 ; 5 *Coke* 115, *Wade's case;* 3 *Burr.* 1354 ; 1 *N. H. Rep.* 174 ; 9 *N. H. Rep.* 365.

*J. P. Hale*, for the plaintiff. We do not controvert the position that if payment had been made to the plaintiff; or to his authorized agent, he could not recover without offering to return the skins. But the authority, in this case, was only to receive such skins as Berry had contracted to deliver. None of the cases on agency will apply ; this was a palpable attempt at fraud.

*Bartlett*, in reply. What broader authority could be given than the power to receive the property, and to give up the note ? Wiggin was *of necessity* made the judge whether the property was sufficient.

PARKER, C. J. On the sixth of December, the day the note became due, the clerk of Berry, one of the defendants, was at the place of payment with skins ready for delivery. If these skins had been such as the defendant promised to deliver, the contract would have been discharged by the readiness to deliver at the time and place. *Story on Sales,* § 307, 308, *and cases there cited; Chitty on Contracts* 727, *note;* 4 *N. H. Rep.* 40, *Robinson* vs. *Batchelder.*

But it appears that the skins were not such as the contract required. There was, therefore, no sufficient tender, and the instructions to the clerk to settle cannot avail. If the plain-

tiff had been there, a farther arrangement might, or might not have been made. His absence, the defendants not being in readiness to perform the contract on their part, cannot relieve them. The contract was broken by the failure to have at the appointed place, skins of a suitable quality.

The next question is, whether the subsequent acceptance of the skins by one of the firm of Wiggin & Co., and the delivery of the note by him to the clerk amounts to payment, or accord and satisfaction. This depends upon the authority he possessed as the plaintiff's agent. Wiggin & Co. were special agents to receive payment. Or perhaps Wiggin alone was so. It is not necessary to consider that question. The case has been argued as if the authority was given to Wiggin & Co. They were authorized to take charge of the skins mentioned in the note, if the defendants should deliver them. The plaintiff did not give them the means of judging what skins would answer the description in the note, and yet he requested them to take charge of them, if delivered, and put the note in their possession. The reasonable inference is, that they were authorized to receive the skins from the defendant, and deliver up the note. And if they, or one of them had attended at Clark's on the day, and there received the skins from the clerk, it is at least questionable whether the plaintiff would not have been bound by the acceptance, notwithstanding the skins were of inferior quality. It might well be held that by authorizing them to receive payment, he gave them power to judge what skins were sufficient for that purpose. And if he did not give them the means of judging, the fault was his own so long as no fraud was practised.

But the transaction on a subsequent day was without authority. Wiggin & Co. had then no authority to receive payment, even in skins of a suitable quality. If Wiggin had attended at Clark's on the day specified, and then refused to receive the skins which were there because the quality was inferior, the plaintiff's right of action would have been

complete, and Wiggin would not have been authorized to settle on a subsequent day on receiving such skins as the note specifies. The agent had authority to receive payment only, and that only at the time mentioned. Still less could he on a subsequent day receive skins of an inferior quality, or compromise and surrender the plaintiff's rights. It is a case of a special limited authority exceeded, and not of a disregard of instructions as in *Hatch* vs. *Taylor*, 10 *N. H. Rep.* 538.

As Wiggin had no authority to receive the skins when they were delivered to him, the plaintiff was neither bound to return them, nor to give notice. The defendants cannot complain. Berry was aware that the skins he sent were not such as the contract required. This fact is shown by his instructions to his clerk ; and the extent of the authority of Wiggin & Co. appeared by the memorandum on the note.

*Judgment on the verdict.*