PRESBY *v.* PARKER.    {Mar. 22, 1876.

*Agency—Ratification by principal—Fraud.*

A, without authority from B, assumed to act as his agent in the sale of land. In negotiating the sale, A, without the knowledge or direction of B, committed a gross fraud upon the purchaser. Upon a bill in equity by the purchaser to set aside the sale—*Held,* that B could not retain the fruits of the fraud without being chargeable with its legal consequences, and that the sale should be set aside.

FROM MERRIMACK CIRCUIT COURT.

IN EQUITY. The bill prays for an injunction restraining said Parker from selling or transferring the notes mentioned in the report of the referee, and that the same may be delivered up to be cancelled.

The cause was committed to a referee, who reported the following conclusions of fact and of law ; and the questions arising thereon were transferred to this court for such action, order, or decree, as may be directed by FOSTER, C. J.:—In the early part of the fall of 1869, the defendant—Alfred W. Parker—was the owner of a farm in Concord (Millville), which, with the buildings he had erected thereon, cost him $2,800. This property he was desirous to sell or exchange, and having consulted one McIntyre on the subject, McIntyre introduced to the defendant Alanson L. Haines, of Wentworth, N. H., who told him that he had valuable timber land for sale at Wentworth, located about two and a half miles from the depot (200 acres), containing a heavy growth of wood and timber. Thereupon the defendant went to Wentworth to examine the property, and Haines carried him to a place which he pointed out as the land he was proposing to sell. It was located about two and a half miles from the depot. The defendant examined the boundaries on two sides of the lot thus exhibited, and was told that what he saw was a fair sample in character of the whole quantity. He was informed and believed that there were 200 acres in all ; and he saw that it was well timbered, though it had been thinned out in spots, the growth being large spruces, rock maple, some white ash, and some hemlock.

My belief is, that Haines did not point out to the defendant the land subsequently conveyed to him, and that in fact the defendant never saw the land which was included in the subsequent conveyance to him, but that Haines exhibited the land which the defendant examined, for the purpose of carrying out the gross fraud which he, with others, succeeded in perpetrating upon both the defendant and the plaintiff.

The defendant, being satisfied with the land and the terms offered him, concluded a trade with Haines in September, through the agency of McIntyre, whereby the defendant sold and conveyed his Millville property at the price of $3,000 to McIntyre, taking in exchange the

property which he supposed he had seen at Wentworth, calling the same 200 acres, at $12 per acre—$2,400—and six notes of McIntyre for $100 each, secured by a mortgage of the Millville property.

Late in the fall of 1869, the defendant went to Wentworth to run out the land, but having ascertained that the surveyor whom he had expected to engage was otherwise employed, and being himself in a hurry, he concluded not to attempt to run the lines then, and returned without having been upon the land. The defendant stopped at a house not far from his supposed purchase over night. He testified that he saw Haines; that up to that time he had heard nothing concerning the land since his purchase; and that he talked with no one there concerning the quantity, quality, or value of the land. There was no evidence contradictory of this. But for some reason the defendant became dissatisfied with his trade; and I find the reason of his dissatisfaction was a suspicion that he had been cheated with regard to the quantity of land embraced in his purchase. He did not suspect that he had bought other land than that exhibited, and he was satisfied with the quality of the wood and timber which he supposed he had seen. In fact, he had been outrageously defrauded,—the deeds which Haines had given him being of land worth not more, at the most, than $1.25 an acre, and covering not more than eighty acres, if so much as that, in quantity, and was situated three and a half or four miles from the depot.

Several people frequently told the defendant that there was reason to fear he had been cheated, by reason of the known disreputable character of the men with whom he had been dealing. Rendered suspicious that something was wrong, by the advice of a friend he consulted a lawyer, who wrote a letter to Dr. McIntyre, the agent and middle-man between Haines and the defendant, with regard to the aforesaid tr'le. The letter was not produced, and was said to be lost; but I find that it contained a claim for damage by the defendant upon McIntyre by reason of the trade, or else a claim that McIntyre should remove the defendant's suspicions by proving to him that he had not been cheated. This letter was followed by one or more interviews between McIntyre and the defendant's lawyer upon the same subject, in which interviews the trade was the subject of complaint on the part of the defendant.

The latter part of May or the first part of June, 1872, one Hutchinson went to see the defendant, and asked him if he wanted to sell his Wentworth lands. The defendant told him he would sell if he could get $2,600 in money. He—Hutchinson—said he thought he knew of a man in Boston that would trade, and that he would see him and ascertain. Subsequently, Hutchinson told the defendant he had seen the man Presby, the plaintiff; that Presby was going to see the land, and would let him know whether he would trade or not; that if they traded, Presby would pay in notes, and that Hutchinson had a man all ready to cash the notes as soon as they should be given. Meantime Hutchinson went to the plaintiff, who held the promissory note of one Calef, indorsed by Hutchinson, on which was due about $200. The plaintiff had frequently called on Hutchinson for payment. Hutchinson told

the plaintiff that he was trading in patent rights, and if he could make a trade so as to get some money he would take up the Calef note ; and he spoke of land in Wentworth, which belonged to one Parker, who wanted to sell it ; that it was very valuable (heavily timbered), the timber on it being worth $8,000 or $10,000. The plaintiff proposing to go to Wentworth to see the land, Hutchinson gave him a slip of paper containing the names of Alanson L. Haines and John Whicher, either of whom he said would show him the land. The plaintiff went to Wentworth, and the first man he met was Alanson L. Haines, to whom he made known his errand. Haines said he knew all about the land, and proceeded to exhibit certain land located one half or three quarters of a mile from the depot. Haines and the plaintiff went round in the woods about an hour and a half, and then Haines told him he had seen a fair sample of the whole lot. It was very heavily timbered. Haines said it would cut fifty cords to the acre for the whole 200 acres. The plaintiff returned to Concord, where he met Hutchinson, and told him he would buy the land and pay $3,000 for it—$2,500 in notes, and $300 in cash, and the surrender of the Calef note at $200. These terms Hutchinson accepted, and a day was fixed for the plaintiff to come to Concord, meet the defendant, and execute the necessary papers. At the appointed time the parties met at the office of Mr. Rolfe in Concord. The deeds and notes were written and signed. Before the execution of the papers, the plaintiff said to the defendant, in substance,— "Is there any doubt there are as many acres as the deed calls for ?" He replied, in substance,—" I think there can be no doubt. Lands generally hold out more than the deeds specify. There may be more or less. The deeds say so much, and they generally hold out more rather than less. No doubt there is fully all that is stated—two hundred acres."

I find the fact to be, that the defendent had no positive knowledge of the deficiency in quantity, but that he had suspicions, and in fact entertained very little doubt, that he had been overreached concerning the quantity and value of his purchase, which, in making his statements to and negotiations with the plaintiff, he did not disclose, but concealed. I find that this suppression and concealment on the part of the defendant was so far an inducement to the trade, that, if it had not been practised, the plaintiff would not have completed the trade without further inquiry. The papers were then executed.

The plaintiff took a deed of warranty from the defendant and wife, and also the two deeds by which the land had been conveyed to the defendant, and gave up to Hutchinson the Calef note, giving him also a note for $150, which has been paid, and a check for $150, which has also been paid to Hutchinson.

In fact, the defendant never employed Hutchinson as his agent in this transaction, nor held him out as such ; and Hutchinson was not his agent, unless all the facts by me reported establish his agency in this transaction by operation of law. The defendant never agreed nor expected to pay Hutchinson for any services with regard to the matter. He never authorized Hutchinson to make any representation or war-

ranty concerning the land, and never suggested to Hutchinson that he should refer the plaintiff to Haines or to Whicher for an exhibition of the land. In fact, he did not know that Hutchinson received from the plaintiff the note for $150, the check for $150, nor the remainder of the Calef note; and he has never received from Hutchinson the proceeds of those notes, or that check. He supposed he was selling the land for $2,500 in notes.

He received three notes,—one of $834, and two of $833 each,—signed by the plaintiff, payable respectively in one, two, and three years from their date, June 19, 1872. These notes have never been negotiated, and the defendant still holds them.

At the close of the evidence before the referee, the plaintiff's counsel, claiming the cancellation of these three notes, tendered to the defendant a quitclaim deed, in due and legal form, of the Wentworth lands, which the defendant refused to receive. The plaintiff then gave the same to the referee for the defendant, and informed him of that fact. The referee annexes the same to this report, and makes it a part thereof, and of the files of the circuit court in this case.

I hold, as matter of law, that the defendant, by availing himself of the fruits of the bargain made by Hutchinson, namely, the taking and retention of the three notes as consideration for the price of the Wentworth land, has so far ratified the dealings of Hutchinson in the premises as to be regarded in law as having constituted him in law his special agent for the sale of the land ; and that he is chargeable with the fraudulent acts and declarations of Hutchinson, done and made for the purpose of effecting the sale, though Hutchinson was not commissioned to commit the fraud. I hold, also, that notwithstanding the plaintiff (as he supposed) made an examination of the land before concluding its purchase, and relied upon that examination, still, as he would not have completed the sale if the defendant had not intentionally concealed his suspicions concerning the defect in quantity of the land, the plaintiff is not precluded from rescinding the sale. I hold, also, that the title and value of the Wentworth land not having changed since its purchase by the plaintiff, and the plaintiff's notes not having been negotiated, and this proceeding having been commenced (as I find the facts to be) as soon as the plaintiff acquired knowledge of the fraud practised on him, the tender of the quitclaim deed at this time is a sufficient restoration of the title to the Wentworth land, and should be regarded as a legal rescission of the contract of purchase of the same.

*Rolfe*, for the plaintiff.

*Mugridge*, for the defendant.

LADD, J. The ground upon which it is contended that the defendant ought not to be deprived of the fruits of Hutchinson's fraud (which he holds in the shape of the notes given by the plaintiff upon the purchase of the land) is, that Hutchinson was not acting as his agent in that

transaction. In other words, it is claimed he should be permitted to ratify and adopt all that part of Hutchinson's conduct which is beneficial to himself, and disaffirm and repudiate the rest, and so escape the consequences of a fraud so gross and criminal. Fortunately, the justice of this case is the law of it. I take it to be clear law that the defendant cannot affirm the trade made on his behalf by Hutchinson, and so treat him as his agent in the matter to that extent, without, at the same time, adopting the ill-omened means whereby it was brought about. He takes it *cum onere*, and, unless he can sustain it as a whole, he must be content to see it fall as a whole, and his gains, of course, go with it. *Mackay* v. *Commercial Bank of New Brunswick*, L. R., 5 P. C. 394; *Hern* v. *Nichols*, 1 Salk. 289; *Alexander* v. *Gibson*, 2 Camp. 555; *Cornfoot* v. *Fowke*, 6 M. & W. 373; *Moens* v. *Heyworth*, 10 M. & W. 157; *Wilson* v. *Fuller*, 3 Q. B. 77; *Udell* v. *Atherton*, 7 H. & N. 172.

It is to be regretted that the defendant was cheated and swindled by McIntyre and Haines when he exchanged his Millville property for the fictitious land in Wentworth. It is always matter of regret when honest men become the victims of rogues and knaves: but that fact is not of the slightest consequence except as it may have had a bearing at the trial upon the question of the defendant's participation in the fraud practised upon the plaintiff by Hutchinson. I assume, however, that the defendant was entirely innocent of any actual participation in that fraud; and, upon that assumption, I am entirely clear he cannot be permitted to retain its fruits. I think the holding of the referee on this point was right, for the reason given in the report.

The referee finds, in effect, that the tender of the deed was made within a reasonable time after the fraud was discovered. I see no error, either of law or fact, in that finding, and I am of opinion that the plaintiff is entitled to a decree.

CUSHING, C. J. On the facts reported by the referee, I should myself have been inclined to find that the defendant impliedly assented to Hutchinson's acting as his agent, and that therefore Hutchinson was his agent; and if he assented to Hutchinson's acting for him, he to that extent held him out as his agent. The referee, however, has drawn a somewhat different conclusion, but reached the same result; and I am not disposed to disturb it.

I think there should be judgment according to the report.

SMITH, J. It is clear that the defendant cannot appropriate to himself the fruits of Hutchinson's fraudulent acts, without becoming responsible for his conduct. Admitting that Hutchinson was not his agent in part, yet, by ratifying his acts, Hutchinson became in law his agent, and consequently he is bound by his representations. Story on Agency, secs. 442–454; *Hatch* v. *Taylor*, 10 N. H. 538; *Concord Bank* v. *Gregg*, 14 N. H. 340; *Hovey* v. *Blanchard*, 13 N. H. 145.

The referee also finds that the plaintiff would not have consummated the trade if the defendant had not suppressed information as to

the quantity of the land both parties supposed was being conveyed. This fact is enough to entitle the plaintiff to rescind the contract.

Again : admitting that no fraud had been practised, the plaintiff thought he was buying and the defendant thought he was selling a tract of land one half mile from the depot in Wentworth, heavily wooded and timbered, worth $12 per acre ; whereas, in fact, the tract was four to five miles distant, contained but eighty acres, was sparsely wooded, and was worth only $1.25 per acre. This was such a glaring mistake, that the grantee would be entitled to relief in equity upon restoring the plaintiff to his original position ; and the tender of the deed to the defendant at the hearing must be held to be in season, under the decisions in this state. *Concord Bank* v. *Gregg*, 14 N. H. 339.

*Decree according to the prayer of the bill.*